UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **EQUAL EMPLOYMENT** ) <br> **OPPORTUNITY COMMISSION,** ) <br> ) <br>                    **PLAINTIFF** ) <br> **AND** ) <br> ) <br> **DANIEL MAYO,** ) <br> ) <br>           **PLAINTIFF-INTERVENOR** ) <br> **v.** ) <br> ) <br> **DCP MIDSTREAM, L.P.,** *formerly* ) <br> *known as* **DUKE ENERGY FIELD** ) <br> **SERVICES, L.P.,** ) <br> ) <br>                    **DEFENDANT** ) | **CIVIL NO. 07-167-P-H** |

**ORDER ON INJUNCTIVE RELIEF**

A jury has found that the defendant DCP Midstream, L.P. ("DCP Midstream") illegally retaliated against employee Daniel Mayo when Mayo complained about racially offensive conduct and/or complained about retaliatory conduct that occurred after he made his complaints about the racially offensive conduct. Jury Verdict Form (Docket Item 180). The jury did not find that DCP Midstream engaged in any actual racial discrimination against Mayo or that it permitted a racially hostile environment in the workplace. Id. The jury awarded Mayo $35,000 in compensatory damages for the retaliation. Id. Because of an earlier stipulation, Mayo will also receive a backpay award of $52,275. See Stipulations (Docket Item 164). The jury deadlocked on punitive damages, and that issue will

be retried. Decision & Order on Pls.' Mot. for New Trial on Punitive Damages (Docket Item 211).

The plaintiffs Equal Employment Opportunity Commission ("EEOC") and Mayo (plaintiff-intervenor) (collectively "the plaintiffs") also request injunctive relief against DCP Midstream under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g)(1), Pls.' Mot. for Injunctive Relief (Docket Item 200), a decision that I as the judge must make. Because I conclude that DCP Midstream has not met its burden to show that it is unlikely that illegal retaliation will recur, I conclude that injunctive relief is appropriate. However, I choose to limit and alter some of the plaintiffs' requested provisions for reasons that I describe.

Accordingly, I **GRANT** the plaintiffs' motion in part.

## BACKGROUND[1]

DCP Midstream operates facilities where employees unload propane from railcars and then load the propane into customers' trucks for subsequent distribution. Mayo was an African-American employee at a DCP Midstream facility in Auburn, Maine. The plaintiffs introduced evidence that in September 2005, Mayo reported to DCP Midstream management that a truck-driver customer had used the term "nigger" in his presence. In response, DCP Midstream promptly banned the truck-driver customer from the facility. Thereafter, the truck-driver lost his job with his trucking-company employer because his work required him to go to the Auburn facility. After learning what had happened,

---

[1] The Seventh Amendment requires that, "in fashioning equitable relief, a district court is bound by
*(continued on next page)*

some of Mayo's co-workers and some of DCP Midstream's other truck-driver customers became upset and angry with Mayo and treated him coldly. Mayo told his direct supervisor that he had been treated differently in the fallout from the September incident with the customer, but the situation did not improve.

In November of 2005, Mayo called DCP Midstream's ethics hotline to report that a co-worker had used the term "nigger" at work. This co-worker and Mayo's direct supervisor were friends and were the longest-employed workers at the company. Two other specific altercations with this co-worker occurred in November. The first incident occurred in the presence of Mayo's direct supervisor and involved the co-worker's use of profanity toward Mayo, which is against company policy. Mayo testified that immediately after this first incident, he typed up a complaint to send to the regional manager, but Mayo's direct supervisor stopped Mayo from sending the complaint at that time (the supervisor placated Mayo by telling Mayo he would take care of it). The second incident involved similar conduct, with both Mayo and the co-worker engaging in a verbal altercation. This time, the direct supervisor encouraged the co-worker to draft a complaint against Mayo to send to the regional manager. The co-worker's complaint resulted in a telephone conference among Mayo, his direct supervisor, and his regional supervisor. In this phone conversation, the direct supervisor denied any knowledge of the first incident, and the two managers chastised Mayo for having a poor attitude. Frustrated after this meeting, Mayo brought his

---

both a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's
*(continued on next page)*

3

concerns regarding perceived retaliation, these two November incidents, as well as the co-worker's use of the term "nigger" to the attention of human resources. Mayo testified that during DCP Midstream's investigation into his complaints, human resources personnel made no effort to address his retaliation concerns.

In December 2005, Mayo received a performance review with numbers adding up to a "Meets Expectations" score. His regional manager reduced that total score, however, so that it fell only within the "Partially Meets Expectations" level, although the arithmetic no longer added up. One day in December, Mayo's direct supervisor came to work early to issue Mayo a written warning stemming from the second November incident with his co-worker. When the supervisor arrived, he witnessed Mayo violating a safety rule, and he suspended Mayo, ostensibly for this violation. Other employees, however, routinely ignored the safety rule in question with no disciplinary consequences. Thereafter, DCP Midstream terminated Mayo on December 29, 2005, using the safety violation as the ostensible justification. The jury found that DCP Midstream had illegally retaliated against Mayo because of his complaints.

## ANALYSIS

The Supreme Court has stated that "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (holding that this general test "appl[ies] with equal force to disputes" under a federal statute

---

verdict." Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 912-13 (10th Cir. 2004).

4

"expressly provid[ing] that injunctions 'may' issue 'in accordance with the principles of equity'"). The plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. Title VII of the Civil Rights Act of 1964 states that:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate . . ., or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). Similar to the statute in question in eBay, Title VII instructs a court to award relief in accordance with the principles of equity; thus eBay's four-factor test applies with equal force to awarding injunctive relief in this case. The jury here found an unlawful employment practice, and I agree. This finding of liability, coupled with Title VII's congressional endorsement of equitable relief, is sufficient to meet the first three prongs of the test. The fourth prong is likewise met because, as the First Circuit has recognized, "the public has an interest in the enforcement of federal statutes." Coxcom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008). As a result, injunctive relief is available as "appropriate."

According to the First Circuit Court of Appeals, in an employment discrimination case a district court "has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be

anticipated from the defendant's conduct in the past." Brown v. Trustees of Boston Univ., 891 F.2d 337, 361 (1st Cir. 1989); see also EEOC v. Preferred Labor LLC, 2009 WL 415429, at *4 (D. Mass Feb. 13, 2009) ("[T]he question of what equitable relief is appropriate or necessary is left to the sound discretion of the District Court."). The First Circuit has also stated, in a private employee lawsuit, that "[a]n injunction should be narrowly tailored to give only the relief to which plaintiffs are entitled," and the court warned against an injunction that is effectively class-wide relief where no class has been certified. Brown, 891 F.2d at 361. Here, however, one of the plaintiffs is the EEOC, a governmental agency recognized by the Supreme Court as "seeking to vindicate a public interest, not simply provide make-whole relief for the employee." EEOC v. Waffle House, Inc., 534 U.S. 279, 296 (2002). Accordingly, in determining whether to award injunctive relief, I must keep in mind the public's interests, as well as Mayo's individual interests. See EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 468 (6th Cir. 1999) ("[T]he EEOC may obtain equitable relief that protects a class of persons from unlawful employment discrimination without citing numerous instances of such discrimination. . . . [T]he EEOC may seek it upon proof even of just one instance of discrimination that violates Title VII. In seeking such relief, the EEOC need not identify a class or its numbers, or even identify a pattern or practice of discrimination."); EEOC v. Ilona of Hungary, Inc., 108 F.3d 1569, 1578 (7th Cir. 1996) ("[I]njunctive relief is appropriate even where the [EEOC] has produced no evidence of discrimination going beyond the particular claimant's case.").

Generally, "[w]hile the awarding of some injunctive relief is mandatory where the discrimination is ongoing, such relief is not required where the discrimination has ceased and there is no reasonable probability of further noncompliance." Preferred Labor LLC, 2009 WL 415429, at *5; see also Bruso v. United Airlines, Inc., 239 F.3d 848, 864 (7th Cir. 2001) ("[T]he relevant inquiry, then, is whether the employer's discriminatory conduct could possibly persist in the future."). But in a retaliation case, the burden is on the employer to show that it is unlikely to retaliate against protected activity in the future. Bruso, 239 F.3d at 864.

Here, DCP Midstream fails to meet that burden. Only one of the four supervisory employees involved in Mayo's termination has left DCP Midstream since the retaliation occurred. DCP Midstream already had formal policies in place prohibiting retaliation before the Mayo incident, but the jury obviously concluded that the previous training and materials for management personnel failed to prevent illegal retaliation. If DCP Midstream's "upper echelon of management felt free to ignore . . . policies in the past, there is no reason to believe that those same members of management will abide by them in the future." Id.; see also Ilona of Hungary, Inc., 108 F.3d at 1579 ("[I]njunctive relief is justified . . . where the individuals who were found to have discriminated remain the defendant's primary decision-makers."). It is true that the retaliation against Mayo arose in a constellation of circumstances that may not recur (a complaint that resulted in a customer's job loss, and a complaint about a co-worker who had a close relationship with a supervisor), and three years have passed since Mayo's termination without reports of any other illegal retaliation.

Those are grounds to limit the relief, but not deny an injunction altogether. Thus, I will grant appropriately limited injunctive relief.

I address the plaintiffs' specific requests:

**1.     Injunction.**   The plaintiffs request an order stating that DCP Midstream "and its managers, officers, agents, successors, and assigns, are enjoined from engaging in retaliation against any individual for engaging in protected activity under Title VII. [DCP Midstream] and its agents are further enjoined from taking any retaliatory action against any individual for participating in this matter in any way or giving testimony in this matter, including, but not limited to, Mayo and other witnesses in this case." Proposed J. for Injunctive Relief 1-2 (attached to Pls.' Mot. for Injunctive Relief) (Docket Item 200-2).

Given the nature of the unlawful employment practice here, this language is appropriate.

**2.     Reporting.**   The plaintiffs request a court-imposed requirement that "[i]f any job applicant or employee engages in protected activity under the non-retaliation provisions of Title VII, [DCP Midstream] must report all such activities to the EEOC within seven days of any such activity," as well as report its "response to such activities within seven days of the conclusion of its response." Id. at 2. The plaintiffs also request that "[t]he report of [DCP Midstream]'s response to the protected activity must contain, at a minimum, the full name, home address and telephone number, social security number and date of birth of the person engaging in the protected activity, the job title or position of the person engaging in the protected activity, a detailed description of the protected activity,

the name(s) and job title of the person(s) engaging in the allegedly discriminatory conduct, the dates of the discriminatory conduct, the dates of the alleged protected activity, a description of the actions [DCP Midstream] took in response to the protected activity, the names and job titles of the persons acting on [DCP Midstream]'s behalf in responding to the protected activity, and the dates of [DCP Midstream]'s actions in response to the protected activity." Id.

I **DENY** the plaintiffs this request. These reporting requirements are unduly burdensome given the excessive detail to be furnished to the EEOC, including unnecessary personal information such as birth dates and social security numbers, which are sensitive information considering current concerns over identity theft. Furthermore, a deadline of seven days is impracticable given the slow pace of business administration in large corporations such as DCP Midstream. Most importantly, however, I conclude that the bureaucracy of this request is excessive, given the other relief I am ordering—letters sent to all employees, training of employees, posting of a notice in DCP Midstream facilities, etc. Those will be sufficient to deter retaliatory practices in the future. DCP Midstream employees who suffer retaliation will be encouraged to report it given their knowledge of Title VII's protections and of Mayo's successful lawsuit and substantial money award.

3.  **Distribution of Policies and Procedures Prohibiting Retaliation.**

The plaintiffs propose a requirement that DCP Midstream, "[w]ithin seven days after the entry of this Judgment for Injunctive relief, . . . must send a letter to all

9

of its employees at each of its Northeast Propane Terminals,[2] advising them of the verdict against [it] in this case on the issue of retaliation,[3] enclosing a copy of [its] policy prohibiting retaliation against individuals who engage in protected activity under Title VII, and stating that [it] will not tolerate any such retaliation and will take appropriate disciplinary action against any manager, supervisor or employee who engages in such retaliation. The letter must be printed on [DCP Midstream]'s letterhead and must be signed by [its] Chief Executive Officer." Id. at 2-3.

This is appropriate relief, but fourteen days will be allowed for sending out the letter.

**4. Posting and Notices.** The plaintiffs propose a requirement that DCP Midstream, "[w]ithin seven days after the entry of this Judgment for Injunctive Relief, . . . must post at each of its Northeast Propane Terminals a copy of [a] remedial notice" detailing the verdict in this case as well as the order providing injunctive relief. Id. at 3 & Ex. B.

I agree with the plaintiffs that a notice should be posted at each of the Northeast Propane Terminals. The language of that notice, however, must be altered to reflect today's decision. The deadline for posting it shall be fourteen days. The notice must remain posted for two years following the entry of the order providing injunctive relief.

---

[2] The Northeast Propane Terminals are those facilities under the current direction of Mayo's regional supervisor.
[3] I am somewhat surprised that Mayo wants everyone to know the amount of his award, but I assume that his lawyers have his individual authority to join in this request.

10

**5. Disciplinary Action.** The plaintiffs request that DCP Midstream, "[w]ithin seven days after the entry of this Judgment for Injunctive Relief, . . . will provide one hour of counseling to [certain named supervisory employees] on the provisions in Title VII and [DCP Midstream]'s corporate policies prohibiting retaliation against individuals who engage in protected activity under Title VII," and that DCP Midstream "will place and permanently maintain a letter in the personnel file of [these various individuals] regarding the counseling, together with a copy of this Judgment for Injunctive Relief." Id. at 3.

I **DENY** this request. These supervisory employees were not parties to this litigation and had no opportunity to defend themselves individually against charges. As such, it would be inappropriate to impose this quasi-disciplinary requirement on them and alter their personnel files. See EEOC v. Wal-Mart Stores, Inc., 2000 WL 1162029, at *5 (S.D. Ill. June 29, 2000) (rejecting a request to issue a warning to or suspend the accused employee); EEOC v. Corinth, Inc., 824 F. Supp. 1302, 1313 (N.D. Ind. 1993) (rejecting a request that the accused employees "attend training seminars or classes to better educate themselves on discrimination in the work place"). It is sufficient that I order DCP Midstream to undertake retaliation training generally for management and workers.

**6. Training.** The plaintiffs ask that the injunction include provisions that:

> (a) DCP Midstream "must conduct a four hour training session for all management and supervisory employees of their Northeast Propane Terminals (including any associated Human Resource

11

managers) on the requirements of Title VII, with an emphasis on Title VII's prohibitions against retaliating against anyone who engages in protected activity;" that this "training must be completed within 60 days of the entry of this Judgment for Injunctive Relief. The training must also be provided to all new management and supervisory employees within 60 days of their hire or promotion into a Northeast Propane Terminal;" and that DCP Midstream "must maintain attendance sheets identifying each person who attended each training session, and must forward a copy of the attendance sheets to EEOC within seven days of each training session." Id. at 3-4; and

    (b) DCP Midstream "must conduct a one hour training session for all non-management employees of their Northeast Propane Terminals on the requirements of Title VII, with an emphasis on Title VII's prohibitions against retaliating against anyone who engages in protected activity." Id. at 4; that this "training must be completed within 60 days of the entry of this Judgment for Injunctive Relief. Such training must also be provided all new non-management employees within 60 days of their hire into a Northeast Propane Terminal;" and that DCP Midstream "must maintain attendance sheets identifying each person who attended each training session, and must forward a copy of the attendance sheets to EEOC within seven days of each training session." Id.

It is appropriate to require that DCP Midstream personnel receive training, but such training is required only on Title VII's prohibition on retaliation, because that was the only illegal employment practice. Illegal retaliation is not a difficult concept to master. Accordingly, one hour of training will be required on illegal retaliation. (Of course, DCP Midstream may expand this training to include other topics if it so chooses.) The same limitations apply to training for non-management employees. With the exception of these changes, I approve the plaintiffs' language.[4]

**7.    Daniel Mayo's Personnel File and Information.** With respect to Mayo, the plaintiffs request that DCP Midstream "must expunge from Daniel Mayo's personnel record all documents relating to his termination and place in his file a letter stating that his discharge was motivated by [DCP Midstream]'s effort to retaliate against him for engaging in legally protected activity," and that, "[i]f asked by a prospective employer for information or a reference concerning Daniel Mayo, [DCP Midstream] must provide only the dates of his employment and last position held, and must advise the caller that they only provide this limited information pursuant to company policy." Id.

The language is appropriate, except that I will not compel DCP Midstream to prevaricate, and thus I will not order DCP Midstream to say that it is providing the limited information "pursuant to company policy." See Bruso, 239 F.3d at 863 ("A

---

[4] The plaintiffs also request that such training be provided by a third-party contractor. Proposed J. for Injunctive Relief 4 (attached to Pls.' Mot. for Injunctive Relief) (Docket Item 200-2). I find that use of a third-party contractor is unnecessary in this case. However, DCP Midstream must provide the written materials and outline of training to the EEOC if the agency so requests.

court may use expungement as a means of removing the stain of the employer's discriminatory actions from the plaintiff's permanent work history.").

**8.     Monitoring.**  Finally, the plaintiffs request that the order detail the authority of the EEOC "to monitor and review compliance." Id. at 5.  They seek the following language:

> (a)  Every six months for the duration of this Judgment for Injunctive Relief, and one month before the end of the final year of the Judgment for Injunctive Relief, [DCP Midstream] must submit written proof via affidavit to the EEOC that it has complied with each of the requirements set forth above. Such proof must include, but not be limited to, an affidavit by a person with knowledge of the counseling . . . and placement of the counseling notation in the permanent personnel files . . . ; an affidavit by a person with knowledge establishing the completion of training; an affidavit by a person with knowledge that the required posting was posted in the terminals and that the letter to employees was sent, together with a copy of [DCP Midstream]'s policies prohibiting retaliation; and an affidavit by a person with knowledge establishing that all documents relating to [DCP Midstream]'s responses to protected activities described in paragraph 2 above have been furnished to EEOC.
> (b) For the duration of this Judgment Regarding Injunctive Relief, [DCP Midstream] must create and maintain such records as are necessary to demonstrate their compliance with this Judgment Regarding Injunctive Relief and 29 C.F.R. § 1602 et seq., and must verify that the reports submitted pursuant to this Judgment Regarding Injunctive Relief are accurate.
> (c) The EEOC has the right to: (1) attend training sessions required by this Judgment for Injunctive Relief, (2) review any and all documents relevant to the relief provided in this Judgment for Injunctive Relief; (3) interview employees, managers, supervisors and contractors, and (4) inspect the premises of the Northeast Propane Terminals.
> (d) Any report or notification to the EEOC required under this Judgment for Injunctive Relief must be made by overnight or certified mail to Markus L. Penzel, Esq., EEOC, JFK Federal Bldg., Room 475, Boston, MA 02203.

Id.

With respect to (a), I approve of the text except for the requirement of "an affidavit by a person with knowledge of the counseling . . . and placement of the counseling notation in the permanent personnel files" and the requirement of "an affidavit by a person with knowledge establishing that all documents relating to [DCP Midstream]'s responses to protected activities . . . have been furnished to EEOC." This language must be removed, in light of my rejection of those remedies above. I approve of paragraphs (b), (c) and (d), except that I see no reason why the EEOC should be able to inspect the premises other than to verify that the required notice has been posted. Provision (c)(4) shall be modified accordingly.

**9.    Successors.**  This language is appropriate to bind DCP Midstream's successors, if any, for the duration of this injunction. See id. at 6.

**10.    Duration of Injunction.**  Because three years have already passed without incident and because the retaliation here resulted from a modestly unusual combination of events, I find that an injunction with a duration of two years (not the five years requested) is appropriate here.

## CONCLUSION

In sum, then, I approve the plaintiffs' requests in paragraphs 1, 3, 4, and 6-10 of their Proposed Judgment for Injunctive Relief, with modifications as described, and I deny their request in paragraphs 2 and 5.

For the above stated reasons, the plaintiffs' Motion for Injunctive Relief is hereby **GRANTED IN PART**.

The plaintiffs shall file with the Court a revised proposed judgment on injunctive relief, modified in accordance with my rulings, by April 20, 2009. In

light of the pending retrial on punitive damages, they shall also state when they request entry of the Order. The defendant shall file any response by April 27, 2009.

**SO ORDERED.**

**DATED THIS 9TH DAY OF APRIL, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**